UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO.  3:14-00183-01 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| MARVIN BROWN | MAG. JUDGE KAREN L. HAYES |

**MEMORANDUM ORDER**

Pending before the Court is a Letter/Motion for Compassionate Release [Doc. No. 107] filed by Defendant Marvin Brown ("Brown").  The United States has filed a response.  [Doc. No. 116].

On September 24, 2014, Brown was indicted by a Grand Jury in the Western District of Louisiana with two counts of distribution of methamphetamine and one count of possession with intent to distribute methamphetamine. On May 1, 2015, Brown pled guilty to Count 2, distribution of 50 grams or more of methamphetamine, and on August 10, 2015, Brown was sentenced to 120 months with 5 years of supervised release.

Brown moves the Court for early release because he has conditions that make him more vulnerable to the COVID-19 virus.  In support of his motion, Brown points out that he has extremely high blood pressure, he is a border/line diabetic, he has a cataract and is losing his eye-sight daily, he has been affected with Hepatitis B, he has a heart blockage, and he is waiting for a heart cath and expects to have stents placed. [Doc. No. 107, p.2].

1

Given the issues raised and the known threat from the Covid-19 pandemic, the Court ordered the United States to file a response no later than June 1, 2020. [Doc. No. 112]. The United States complied with that directive and filed its opposition [Doc. No. 116] on May 29, 2020.

The United States asserts that Brown has not sought relief through BOP administrative channels by requesting release on COVID-19 grounds from the Warden and then the Office of General Counsel (OGC) as required for release, and, therefore, the Court does not have jurisdiction to consider his motion.[1]

*Compassionate release under 18 U.S.C. § 3582(c)(1)(a)*

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence, under 18 U.S.C. § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," under 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, under 18 U.S.C. § 3582(c)(2). At least in the context of relief under § 3582(c)(2), which allows a sentence reduction based upon a retroactive guideline amendment, the Fifth Circuit has recognized the prerequisites are jurisdictional. *See United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) ("The first question is whether the district court had jurisdiction to reduce [the defendant's] sentence at all.").

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy

---

[1] Brown did file for a reduction of sentence pursuant to Section 404 of the First Step Act. [Doc. No. 98]. However, such request was denied on May 12, 2020. [Doc. No. 109].

statements. Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has *fully exhausted all administrative rights* to appeal a failure of BOP in bringing a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added).

The requirement that an inmate first exhaust his administrative remedies within the BOP is jurisdictional. *See Garcia*, 606 F.3d at 212 n.5; *see also United States v. Raia,* 954 F.3d 594 (3d Cir. 2020) (characterizing the defendant's failure to exhaust administrative remedies as "a glaring roadblock foreclosing compassionate release at this point"); *United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *3–6 (D. Md. Apr. 3, 2020) (concluding in a lengthy discussion that § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and not subject to any exceptions); *United States v. Eberhart*, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (holding, in a case involving a compassionate release motion based on COVID-19 concerns, "[b]ecause defendant has not satisfied the exhaustion requirement, the court lacks authority to grant relief under § 3582(c)(1)(A)(i)").

At the very least, the exhaustion requirement is a mandatory claims-processing rule that must be enforced where, as here, it is invoked by the United *States. See Eberhart v. United States,* 546 U.S. 12, 18-19 (2005) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a non-jurisdictional but mandatory claim-processing rule that "assure[s] relief to a party properly raising [it]"); *United States v. Pesina-Rodriguez*, 825 F.3d 787, 788 (5th Cir. 2016) ("Although not jurisdictional, the time limits in Rule 4(b)(1)(A) [for filing a notice of direct appeal in a criminal case] are mandatory claims-processing rules.").

The Supreme Court has recently reaffirmed the principle that a district court may not ignore a statutory command such as that included in § 3582(c)(1)(A). In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 ("PLRA"). That Act mandates that an inmate must exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were permitted to pursue PLRA claims even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances. *Id*. at 1856. The Court further noted that "judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions," a statutory exhaustion provision "stands on a different footing." *Id*. at 1857. That is because "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id*.

And in the light of *Ross*, there is no merit to any suggestion that failure to exhaust can be overlooked based on an assertion that doing so would be futile, or current circumstances justify its waiver, as § 3582(c)(1)(A)'s statutory exhaustion requirement cannot be excused. *Compare Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (addressing futility in the context of a *judicially* created exhaustion requirement) *with United States v. Koons*, 2020 WL 1940570 (W.D. La. Apr. 21, 2020) (in reliance on *Ross* and other Supreme Court decisions, concluding "the Court has no power to waive the exhaustion requirement").

But beyond being mandatory, Congress' requirement that inmates must initially resort to administrative remedies exists for good reason: BOP conducts an extensive assessment for such

4

requests, and it is in the best position to do so. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g).[2] As those procedures reflect, the BOP completes a diligent and thorough review, applying its considerable expertise concerning both the inmate and the conditions of confinement.

Significantly, the BOP will now be guided in its review by an expanded consideration of whether a defendant is suitable for transfer to home confinement as an alternative to compassionate release. In a March 26, 2020 Memorandum issued by Attorney General William Barr, the BOP was directed to prioritize the use of its various statutory authorities (such as 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g)) to grant home confinement in appropriate circumstances.[3] Long before the COVID-19 pandemic, that authority included the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally-ill inmates specified under 34 U.S.C. § 60541(g).

More recently, an April 3, 2020 Memorandum from the Attorney General to the BOP, pursuant to § 12003(b)(2) of the CARES Act, Pub. L. No. 116-136, "expand[s] the cohort of inmates who can be considered for home release." Under that Memorandum, in order to maximize transfer to home confinement "all appropriate inmates held at [Oakdale], FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations," the BOP is now executing the following mandates:

---

[2] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.
[3] See the publicly available March 26, 2020 Memorandum from the Attorney General to the BOP Director, available at https://www.justice.gov/file/1262731/download.

> • To immediately review all inmates who have COVID-19 risk factors, as established by the CDC, beginning with those at the institutions listed above; and
>
> • To immediately process for transfer and to immediately transfer, following an appropriate quarantine, such inmates to home confinement.[4] Such transfer should be made even if electronic monitoring is not available, so long as "doing so is appropriate and consistent with [the Justice Department's] obligation to protect public safety."

Memorandum of the Attorney General to the Director of the Bureau of Prisons, "Increasing the Use of Home Confinement at Institutions Most Affected by COVID-19," April 3, 2020.[5] Accordingly, it is highly likely many more inmates will be released to home confinement following the BOP's administrative review process, thus obviating the need for compassionate release.

On April 5, 2020, the BOP responded promptly to that Memorandum, asserting it had begun "urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General," and that it had "increased resources to review and make appropriate determinations as soon as possible."[6] And those assertions are not hollow promises. In that same April 5, 2020 statement, BOP noted that since the time the Attorney General issued his March 26, 2020 Memorandum, "the BOP has placed an additional 566 inmates on home confinement," bringing the total number of inmates on home confinement to 3,419, and the total number in halfway houses to 7,199. *Id*. Also, according to BOP's website, as of May 18, 2020, that number had increased to include an additional 2,799 inmates on home confinement. Accordingly, it is highly likely many more inmates will be released to home confinement following BOP's administrative review process, thus obviating the need for compassionate release.

---

[4] The Memorandum specifies that this quarantine may occur at "an appropriate BOP facility," or "subject to your case-by-case discretion, in the residence to which the inmate is being transferred." April 3, 2020 Memorandum, at 2.

[5] Available at https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000.

[6] *See* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp.

While some inmates, in spite of the BOP's best efforts to establish and implement anti-COVID-19 protocols, have become ill or succumbed to the virus, the solution is not to exclude the BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and the BOP is uniquely situated and qualified to assess those factors during the statutorily required 30-day review period.[7]

Accordingly, consistent with the First Step Act, Brown must first present his request to the BOP, permitting it to evaluate his current circumstances in light of the coronavirus concerns. He cannot petition for judicial relief until, as the statute explicitly provides, the BOP denies the request or 30 days have passed after presentation of the request to the warden, whichever is earlier. Because Brown has not yet exhausted administrative procedures, this Court must dismiss his motion for lack of jurisdiction. *See, e.g., Raia,* 954 F.3d at 597; *United States v. Koons*, No. 16-cr-214, 2020 WL 1940570 (W.D. La. Apr. 21, 2020) ("The Court's finding that, absent exhaustion, it lacks jurisdiction to proceed with this motion is in accord with other Louisiana federal district courts, as well as myriad district courts around the nation who have concluded that the First Step Act exhaustion requirements are mandatory and cannot be waived by the courts.") (collecting cases); *United States v. Cain,* No. 17-CR-00204, p. 4 (W.D. La. Apr. 8, 2020) ("The COVID-19 situation as it exists in the prison system does not, without more, establish that it is appropriate for the Court to accede to [the defendant's] request to jump over the procedure provided in the law on

---

[7] For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation for inmates (at a time when interstate transportation services often used by released inmates are providing reduced, if any, service), and of supervision of inmates once released (at a time when the Probation Office has necessarily cut back on home visits and supervision).
.

7

compassionate release. There is nothing extraordinary or compelling that convinces the court to ignore the requirement that [the defendant] first make his request to the Warden of the facility.").

Thus, Brown's motion for compassionate release must be dismissed for lack of jurisdiction, as he has not yet exhausted his administrative remedies

Therefore, for the foregoing reasons,

**IT IS ORDERED** that Brown's motion [Doc. No. 107] is **DENIED** at this time, subject to re-urging if Brown exhausts his administrative remedies as set forth in the statute.

MONROE, LOUISIANA, this 2nd day of June, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

8